**TIDE PRODUCTS, INC., Appellant,**

v.

**E. J. BROWNING, Appellee.**

No. 8314.

Court of Civil Appeals of Texas, Amarillo.

March 26, 1973.

Rehearing Denied April 23, 1973.

Evans, Pharr, Trout & Jones, Charles B. Jones, Lubbock, for appellant.

Huff & Bowers, Forrest Bowers, Lubbock, for appellee.

JOY, Justice.

In this venue case Tide Products, Inc. has appealed from the trial court's order overruling its plea of privilege. Affirmed.

Appellee brought this action against appellant on the theories of negligence and strict liability through breach of warranty, relying upon the doctrine of res ipsa loquitur as the result of the aerial application of chemicals by appellant to a peanut crop that appellee contended was damaged by the spraying operation.

Appellant contends that there was no evidence that the product furnished by Tide caused damage to appellee's peanut crop, and that the finding of evidence to that effect by the trial court was against the overwhelming weight of the evidence. Appellee had applied a mixture of three chemicals to the peanut crop, consisting of Manzate, Sevin and Claw El. The Manzate and Sevin, a fungicide and pesticide respectively, were purchased from Tide. The Claw El was purchased elsewhere, mixed with the other two chemicals and aerially applied to the peanut crop. Tide secured the services of the aerial applicator, although Tide contends that there was no evidence that the applicator was an agent of Tide. Appellee testified that within a few days after the application of the chemical mixture to his peanut crop the peanuts began to die. Appellee also testified that the peanut crop was killed in a pattern consisting of strips that were the most severe on the side of the field of the first aerial spraying and decreasing in intensity by strips toward the side of the field on which the final spraying was accomplished. Another farmer, Meyers, whose peanut field was sprayed similarly by the same airplane, immediately after appellee's field, testified that damage to his crop was similar to appellee's damage but decreasing in severity in a pattern compatible with the spraying pattern of the airplane. There was evidence that the plane, immediately prior to the spraying on appellee's farm, had used Atrazine and Ag-Oil

chemical spray on other farms. Appellee testified that he had observed a cotton field suffering from damage by the application of Atrazine and that the damage was similar to that suffered on appellee's peanut crop and the crop of Meyers. An expert witness in crop science was called by appellee and testified, inter alia, that the Claw El chemical was not harmful to plants. Further, the expert testified that in his opinion the damage to the crop was caused by, or related to, the chemical application.

■ In the absence of findings of fact or conclusions of law, there exists that implication that all fact findings necessary to sustain the judgment below were found by the trial court, and we look only to that evidence favorable to the appellee, disregarding all unfavorable and contradictory evidence. Renfro Drug Company v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950); see also, Knight v. Smith, 405 S.W.2d 392 (Tex.Civ.App.—Dallas 1966, no writ). Although admittedly there is no direct evidence that the chemicals applied to the peanut crop and furnished by Tide were defective, a review of the testimony reveals sufficient evidence of a circumstantial nature that the chemicals applied could have caused the damages to the peanut crop. See Darryl v. Ford Motor Company, 440 S.W.2d 630 (Tex.1969); also, C. A. Hoover and Son v. O. M. Franklin Serum Company, 444 S.W.2d 596 (Tex.1969). In reviewing all of the evidence, we do not find it against the overwhelming weight of the evidence. Appellant's first two points are overruled.

■ Appellant's points three and four assert error of no evidence and against the overwhelming weight of the evidence the finding by the trial court of a contaminate in the spray equipment other than the chemical sprayed on the crop. The testimony reveals that Atrazine and Ag-Oil had been used in the spray plane just prior to the spraying of the three chemicals of Manzate, Sevin and Claw El on appellee's crop. Further, there was evidence that the damage to the crop was similar to damage that could be expected from application of Atrazine. We are of the opinion that this is sufficient to raise the issue, at least circumstantially, as to whether or not a residue of Atrazine was left in the spray plane that caused the injury to the crop complained of.

■ Appellant complains by its next two points that there was no evidence that the aerial applicators were agents of Tide, and no evidence that any salesman or agent of appellant had authority to contract for the aerial applicators. The evidence most favorable to an implied finding of agency by the trial court is found in the testimony of appellee and other farmers in the nearby area. Appellee testified that Tide's employee told him that Tide had three aerial applicators that "worked for them all the time." Appellee also testified that Tide secured the aerial applicator's services and that he never talked to or corresponded with the applicator until the very day of the aerial spraying operation. Further, appellee testified that an employee of Tide attempted to collect the charges for both the chemicals sold by Tide and the aerial application within a few days after the application of the chemicals to the crop. The aerial applicator also testified that Tide always paid for the aerial spraying on the 1st and 15th of each month and that no billing was made directly to the farmers by the applicator. Also, four other witnesses, identified as farmers who had contracted with Tide, testified that they contracted on a turn-key basis and paid Tide for both the chemicals used as well as the aerial application thereof. We think this is sufficient evidence to support any implied finding of agency by the trial court.

Finding no reversible error, we affirm the judgment of the trial court.